## CULVER *a.* VAN ANDEN.

*Supreme Court, Brooklyn Special Term ; March,* 1857.

ACTION FOR LIBEL.—RULES OF PLEADING.

It is not necessary in a complaint for libel to set out the whole of the obnoxious publication, but the pleader may extract only particular passages complained of, provided their sense be clear and distinct.

The Code has dispensed with the necessity of stating in a complaint for libel, by way of inducement, extrinsic facts necessary to show the application of the words charged to the plaintiff.

But it is still necessary to aver by way of inducement any extrinsic facts necessary to show the words charged to be libellous.

Motion to make a complaint more definite and certain.

This was an action for libel. The complaint was as follows :—

TITLE OF THE CAUSE.

The complaint of Erastus D. Culver, plaintiff in this action, against the defendant, Isaac Van Anden, respectfully shows to this court :—

1. That at the time of the uttering and publishing of the several libellous articles hereinafter set forth, the plaintiff was and still is the City Judge of the Brooklyn City Court, and was then and still is holding said office, and discharging its duties; that the said defendant then was and still is the publisher and proprietor of a certain daily newspaper called the "Brooklyn Daily Eagle," printed and published in the city of Brooklyn, in said county ; and being such publisher and proprietor, he, the said defendant, well knowing the premises, but intending to injure and scandalize said plaintiff, and to bring him into reproach among the people of said city, on or about the 21st day of January, 1857, at the city aforesaid, published in said newspaper a certain false, malicious, and defamatory libel of and concerning said plaintiff, in the words following, that is to say :—" There is not a human being in Kings county who looks upon Culver" (meaning said plaintiff) " with any feeling of confidence. He" (meaning said plaintiff) " is universally and justly regarded as a creature,

whose natural path of duty is to crawl through the crooked, slimy labyrinths of politics, and to do such dirty work as nobody else can stoop to.

" Since his" (said plaintiff meaning) " elevation to the bench of the City Court, the character of that establishment" (meaning said Brooklyn City Court) " has been a reflex of the character of the incumbent. Its machinery has been prostituted to the basest uses; instead of feeling the dignity of the position, he" (meaning the said plaintiff) " dragged it" (the said City Court meaning) " down to his own level like the perfumed porcine quadruped, who would return to her wallowing in the mire, no matter how thoroughly scrubbed and curried."

2. For a further cause of action, the plaintiff avers that the said defendant, intending as aforesaid, published in said newspaper, on or about the 28th day of January, 1857, and caused to be sent forth therein a certain other false, malicious, and defamatory libel of and concerning the said plaintiff in the words and figures following, to wit:—

" They" (meaning the readers of said newspaper) " will see in those acts" (meaning certain bills drawn and pending before the Legislature of this State) " the designs of the individual" (meaning said plaintiff) " who now prostitutes the City Court" (meaning the Brooklyn City Court, of which the plaintiff was then and still is the judge) " to be the tool of political tricksters, and make it a gag and handcuff to stuff in the mouth and tie the hands of any public officer who may stand in the way of hungry office-beggars. This man Culver" (meaning said plaintiff) " is now busily engaged in having himself constituted sole dictator of Brooklyn, by usurping the functions of every public body within the city.

" There is not a human being in the city" (meaning the city of Brooklyn, where the plaintiff then lived and still lives) " who has faith in his" (said plaintiff meaning) " political integrity, or even can give him" (the said plaintiff meaning) " credit for the commonest sense of decency, or regard for the opinion of the community. Not the lowest degree of soddened idiocy could pin its faith to such an idol" (meaning said plaintiff).

3. And for a further cause of action, the plaintiff avers that said defendant intending as aforesaid, published in said newspaper, on or about the 30th day of January, 1857, in said city,

Culver *a.* Van Anden.

and caused to be sent forth in same, a certain other false, mali-
cious, and defamatory libel, of and concerning the said plaintiff,
in the words and figures following, to wit :—

" It would be a relief to this community to abolish it" (mean-
ing the Brooklyn City Court, of which plaintiff was then and
still is judge) " forthwith. We do not wish to make war on in-
dividuals, but when they attempt to convert the machinery of a
court to base purposes, and endeavor to usurp unheard-of pow-
ers, and perpetrate a wholesale foray on the treasury, in the
most shameless and indecent manner, they become a plague as
grievous as the vermin of Egypt," meaning and intending
thereby to charge that the said plaintiff, as such city judge,
had wickedly and corruptly attempted to convert said court to
base and corrupt purposes, and that said plaintiff had corruptly
attempted to usurp unheard-of powers, as such judge, and had
corruptly and fraudulently attempted to get money from the
public treasury in a shameless and indecent manner.

By reason of which said several publications, by said defend-
ant as above set forth, the said plaintiff has been injured and
sustained damage.

Wherefore plaintiff demands judgment against the said de-
fendant for the sum of ten thousand dollars damages, besides
costs.

JAMES J. LOWRIE, *Pltff's Att'y.*

The defendant now moved for an order requiring the plaintiff
to make his complaint more definite and certain in the following
particulars :—

1. By setting forth in the second cause of action the bills
pending in the Legislature referred to therein, or the purport of
the same.

2. By setting forth before the words alleged to have been
published, as set forth in the third cause of action, matters to
show the application of those words to the City Court of Brook-
lyn, and to show the meaning or application of the words so
published.

*J. A. Lott*, for the motion.

The plaintiff in person, opposed.—I. The first amendment
asked by defendant is wholly unnecessary. It is of no conse-

quence what the bills alluded to as pending before the Legislature were. The design imputed to the plaintiff in those bills forms no part of the libellous charge in the second count. They were mentioned only as introductory to and connected with the word "*individual*" to whom the libellous matter referred. The libel charged relates not to those bills or plaintiff's "design" in them, but to his connection with the City Court and to his acts on the bench. Hence it would be a work of supererogation to set forth those bills or their purport, as they could in no event justify, explain, or palliate the libel. Moreover, if those bills, or plaintiff's connection with them, furnish any excuse for publishing what is *prima facie* a libel, it is for the libeller and not the plaintiff, to set them forth.

II. The second amendment asked is also wholly unnecessary. The word "it" in that count is alleged to mean the Brooklyn City Court, and if that is denied in the answer, the plaintiff must prove the meaning or the application. The plaintiff in an action for a libel is no more bound to set forth the whole article, of which the libellous words form a part, than is the plaintiff in an action for slander required to set forth the whole conversation, of which the slanderous words are a part. This is never done in either. It would be requiring the party to set forth his evidence in addition to his cause of action. So far from this, the plaintiff is at liberty to restrict his claim for damages to a particular part of a libellous article, and on the trial to limit it to only a part of the matter charged in his complaint (Gould *a.* Weed, 12 *Wend.*, 12). The meaning and application of the words in that count cannot be mistaken.

BIRDSEYE, J.—I can see no good reason for requiring the plaintiff to set forth in his complaint the bills, or the purport of the bills, pending before the Legislature, and referred to at the commencement of the alleged libellous matter set forth in the second cause of action. The libellous matter in that count, or cause of action, is that which follows the word "prostitutes;" and it depends upon that word, and not upon the previous word "designs." It seems to me the reading of the sentence should clearly be, that the plaintiff *prostitutes* the City Court to be the tool, &c., not that he *designs* it to be the tool, &c. It does not seem to me to be the natural or proper construction of the charge

made against the plaintiff, that the readers of the defendant's paper will see in the acts or bills pending before the Legislature, that it is the design of the plaintiff that the City Court shall be the tool of tricksters, &c. But rather : that in those acts, the readers will see the designs of the individual there referred to. What those designs are, or to what they relate, the charge does not disclose. But it proceeds to point out the individual who is alluded to; and he is averred to be the individual who now prostitutes the City Court, to be the tool of political tricksters, and (*who* being understood) makes it a gag and handcuff, &c. It is for this description of him that the action is brought, and in the description the libel is to be found. Whatever *designs* on his part were to be seen from the acts alluded to, they are not averred by the pleader, and do not seem from the terms quoted from defendant's paper to relate to the City Court, or to his conduct therein. It is not certain that the first part of this sentence might not have been omitted entirely. Doubtless the general rule is, that in declaring for a libel, the whole assertion charged as libellous should be given ; and that sentence should not be divided. But when, as would seem to be the case here, the libel is in the mere *descriptio personæ*, and not in the main averment of the sentence, I do not see why the allegation of the pleader may not be made to correspond to the fact. The general rule is clear that it is not necessary, in a case of libel, to set out the whole of the obnoxious publication. Starkie says it is sufficient to extract the obnoxious passages, provided their sense be clear and distinct (1 *Starkie on Slander*, 380) ; and it is added, on the authority of Chief-justice Abbott, in Buckingham *v.* Murray (2 *Carr. & P.*, 46), that it is not necessary to set out another part of the publication to which the libellous passage refers, provided the part which is set out be in itself distinct and intelligible.

It may be added, that the motion as to the second cause of action seems also to be unnecessary. The sentence itself shows that the *acts* which it is asked that the plaintiff be compelled to set out in his complaint, had been previously referred to by the defendant in the article from which this sentence is an extract. They are spoken of, as " those acts," meaning, evidently, acts previously described. If so, they will be known with sufficient certainty upon the trial. For the general rule is, as was

said by the same learned judge in Cooke *v.* Hughes (*Ryan & Moody*, 112), that the defendant has a right to have the whole of the publication read from which the passages charged as libellous are extracts. The reason is obvious. He is entitled to show by the whole context that the words alleged to be libellous were not, in fact, used in an actionable sense. And this rule has been carried so far that where a letter of the defendant's was read, which referred to an account of the transaction related in a newspaper, that newspaper was held to be evidence (Weaver *v.* Lloyd, 1 *Carr. & P.*, 295).

The second branch of the motion relates to the third cause of action set forth in the complaint. There can be no doubt that this count would have been defective according to the law as it stood before the Code, and as it was laid down in the case of Miller *v.* Maxwell (16 *Wend.*, 9).

In that case it was held, as it had been often held before, that where a publication, in its nature libellous, does not on its face point to any particular individual as the person libelled, the person bringing suit on account of such publication, to maintain his action, must allege, by way of inducement, such extrinsic facts and circumstances as that when read in connection with the libellous publication, and the inuendoes connecting the publication with the introductory matter, the conclusion will be inevitable in the mind of the reader that the plaintiff is intended to be slandered.

The charge counted on in this third cause of action is precisely of this character. It does not refer to the plaintiff by name. It does not point to any particular individual. At common law, averments must have been added to show the application of the charge to the plaintiff; but by section 164 of the Code this rule is changed, and for the very purpose of dispensing with these averments. It is now *not* necessary, in an action for libel or slander, to state in the complaint any extrinsic facts, for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose; but it is sufficient to state generally that the same was published or spoken concerning the plaintiff; and if such allegation be controverted, the plaintiff is bound to establish, on the trial, that it was so published or spoken. In Pike *v.* Van Wormer (5 *How. Pr. R.*, 174), it was said that this section was enacted in order

to obviate the difficulty occasioned by the rule as stated in Miller *v.* Maxwell. From the principles laid down in that case by Judge Willard, and also by Judge Harris in the same case, on a subsequent occasion (6 *Ib.*, 100, 101), and also by Judge Duer and his associates, in Fry *v.* Bennett (5 *Sandf. S. C. R.*, 66, 67), which need not be repeated here, the second branch of the defendant's motion is unwarranted. The Code now says it shall be sufficient to state generally that the defamatory matter was published concerning the plaintiff, and without averring extrinsic facts to show its application to him. If that allegation is denied, it must be proved on the trial. The court has no power to change the rule contained in the statute; or to say that the plaintiff must set forth matters which show the application of the libellous words to the City Court of Brooklyn. To show that would only furnish ground for concluding that the words were applicable to the plaintiff, who was the judge of that court. That indirect process is now wholly done away with. It is now sufficient to say the charge was made concerning the plaintiff.

So far as the second branch of the motion demands an explanation of the *meaning* of the words charged as libellous, it stands upon a different footing. The rule on *that* subject is not affected by section 164 of the Code. Wherever it was necessary before the Code to aver extrinsic facts to show the meaning of the alleged defamatory matter, it is necessary still (see cases cited above). But such averments were never necessary when the words were actionable in themselves; that is, when they conveyed a clear and direct imputation of a slanderous character. It was only when the words were ambiguous, that they were to be aided by averring extrinsic facts.

If the application of the words charged in the third count to the plaintiff be, as it must be, taken as sufficient, I think a perusal of the count will show that there is no ambiguity in the words used, and no want of certainty in respect to the imputation intended to be conveyed.

The motion must be denied, with $10 costs.