# R. S. ANDERSON, Appellant, v. O. W. SHOCKLEY.

### Division Two, January 6, 1916.

1. **SLANDER: Instruction: Confining Jury to Specific Charge.** In an action for slander, wherein the petition charges only that defendant in the presence of a named person called plaintiff a thief, an instruction which tells the jury that they cannot find for plaintiff unless they find from the evidence that defendant in the presence and hearing of said witness spoke the defamatory words stated, even though he spoke such words. to other persons at different times and places, is not error, if to it is added, or by another instruction the jury are told, that the words spoken to others may be considered for the purpose of showing malice.

2. **———: ———: ———: Malice: Pleading.** In a slander suit plaintiff must either confine himself to one publication as a basis of recovery, or charge each separate and distinct publication upon which he seeks a recovery in a separate count. But although he charges only one publication as the basis of his action, and can recover only for that, he is entitled to an instruction telling the jury that, if they find from the evidence that defendant spoke of and concerning plaintiff slanderous and defamatory words like those charged, they can consider such evidence as tending to show express malice. But he is not entitled to recover damages for such publication to others not charged.

3. **———: Pleading: Rule Changed by Statute.** The common-law rule has not been so changed by statute as to relieve plaintiff in a slander suit from the necessity of definitely averring when and where the defamatory publication was made. The statute (Sec. 1837, R. S. 1909) has changed the rule only to the extent of relieving him of the necessity of alleging "any extrinsic facts for the purpose of showing the application to plaintiff of the defamatory matter."

Appeal from Maries Circuit Court.—*Hon. John M. Williams,* Judge.

REVERSED, AND REMANDED.

*C. C. Bland, J. J. Crites* and *L. V. Hutchison* for appellant.

(1) The question whether or not the defendant was actuated by malice in uttering the defamatory words alleged in the petition was for the jury, and the court erred in refusing instruction number 8, asked by the plaintiff, authorizing the jury to take into consideration the evidence showing that defendant had on divers occasions prior to July, 1908, uttered defamatory words similar to those charged in the petition. 18 Am. & Eng. Ency. Law, p. 1012; Anderson v. Shockley, 159 Mo. App. 334; Buckley v. Knapp, 48 Mo. 152; Callahan v. Ingram, 122 Mo. 355; Harrell v. Plimpton, 166 Mass. 585; Collins v. State, 39 Tex. Crim. 30; Casey v. Hulgan, 118 Ind. 590; Beneway v. Thorp, 77 Mich. 181. (2) No person was named in the petition to whom, or in whose presence the defendant uttered the slanderous words charged in the petition, and it was competent for plaintiff to prove that he uttered the defamatory words in the presence of one or more persons, although the utterances may have been on different occasions, provided they were made within the time and at the place alleged, it being a question of fact for the jury as to whether or not there was a publication. 18 Am. & Eng. Ency. Law, p. 1013. And it was error to refuse to submit this question to the jury on Vaughn's testimony, as was done by the court in refusing instruction number 9 asked by the plaintiff. Atwinger v. Fellner, 46 Mo. 276; Bradshaw v. Perdue, 12 Ga. 510; Downs v. Howley, 112 Mass. 237; Perry v. Potter, 124 Mass. 338; Sec. 1837, R. S. 1909; Johnson v. Bush, 171 S. W. (Mo. App.) 636. (3)

By instruction number 4 given for the defendant the court narrowed the scope of the petition and testimony as to time and place of the utterances of the defamatory words, confined the plaintiff to a definite and particular date and to a located and specific place not alleged in the petition, and in effect withdrew the evidence of James F. Vaughan from the consideration of the jury, by whom plaintiff proved all of the slanderous words alleged in the petition, within the time and at the place alleged. This instruction in thus limiting both the place and the evidence is fatally defective. Pottery Co. v. Folckemer, 131 Mo. App. 105; Eckard v. Transit Co., 190 Mo. 593; Shanahan v. Transit Co., 109 Mo. App. 228; Imboden v. Transit Co., 111 Mo. App. 220; Phelan v. Paving Co., 115 Mo. App. 435.; Boyce v. Railroad, 120 Mo. App. 175; Rose v. Spies, 44 Mo. 20; Meyer v. Railroad, 45 Mo. 137. The allegations that the slanderous words were uttered on about July 30th, at the county of Pulaski, did not require the plaintiff to prove their utterance on that particular date, nor confine him to proof of any special or particular spot or time in Pulaski County. Black's Law Dict., p. 849; Brown v. Riddle, 3 Ala. App. 292; Keer v. State, 105 S. W. (Tex.) 54.

*Frank H. Farris* and *W. D. Johnson* for respondent.

(1) Appellant had a right, no doubt, to have the jury told that if they found for him, in assessing the damages sustained, they could take into consideration the publicity given thereto, by the repetition thereof of respondent, or by his speaking of words of similar import. This appellant did not ask, and having taken no action and made no request for such a declaration, he cannot now complain. Estes v. Antrobus, 1 Mo. 121; Weaver v. Hendricks, 30 Mo. 506; Pennington v. Meeks, 46 Mo. 220; Barbee v. Hereford, 48 Mo. 325;

Buckley v. Knapp, 48 Mo. 161; Hammon v. Douglas, 50 Mo. 442; Rammell v. Otis, 60 Mo. 366; Carpenter v. Hamilton, 185 Mo. 615; Isreal v. Isreal, 109 Mo. App. 373. (2) Testimony of other similar slanders at other times and places, and in the presence of other parties, could not be permitted as the basis of his cause of action, because it was of a different time and different place and of different words than that set out in his petition; and because such proof of such other slanders was only admissible to show the degree of publicity given to the slander, and to fix the probable damage which he may have sustained. Having elected and chosen the statement upon which he would base his action, and having proceeded upon it until the trial was complete, he could not be permitted to shift his action to another cause, entirely different from that which he had pleaded. 25 Cyc. 436; Walter v. Hoeffner, 51 Mo. App. 49; Pennington v. Meeks, 46 Mo. 217; Christal v. Craig, 80 Mo. 370; Lewis v. McDaniel, 82 Mo. 586; Vanloon v. Vanloon, 159 Mo. App. 269; Conran v. Fenn, 159 Mo. App. 681; Flowers v. Smith, 214 Mo. 129.

FARIS, P. J.—Plaintiff sued defendant in Pulaski County for slander. The venue was changed on the application of defendant to Maries County, where the case was tried, a verdict rendered for defendant and plaintiff appealed. The sum claimed as damages was ten thousand dollars; hence our jurisdiction. We may say in passing that this case has been tried before, wherein defendant mulcted in damages in the sum of $1250, appealed and obtained a reversal and a new trial. [Anderson v. Shockley, 159 Mo. App. 334.] To the latter case reference is made for such of the facts as we may not deem it necessary to set out herein.

Since upon the instant appeal no points are made except as to the action of the court in giving three in-

structions, which we set out in our opinion, we need not here go very extensively into the facts. The petition upon which the trial below was had, contains but one count, the charging part of which and which alone is pertinent here, runs thus: "Plaintiff for his second amended petition herein states that the defendant on or about the 30th day of July, A. D. 1908, at the county of Pulaski, in the State of Missouri, wilfully, wantonly and maliciously spoke of and concerning the plaintiff, R. S. Anderson, certain false, defamatory and slanderous words, to-wit: 'R. S. Anderson (meaning the above-named plaintiff) is a thief; that he (meaning plaintiff) stole a set of harrow teeth from me and I can prove it by John Ormsby.' " Thereafter followed prayer for judgment in the ordinary form.

The evidence on the part of plaintiff tended to prove that about the latter part of July, 1908, at the railroad depot in the town of Crocker, in Pulaski County, defendant spoke to plaintiff in the presence of one Albert Manes sufficient of the words complained of to form substantially the statement set out in the petition. Testimony was also offered on the part of plaintiff that defendant at divers other times and places, particularly to one James F. Vaughan and to a certain J. M. Carmack, made statements of similar import, in which he charged plaintiff with having stolen his harrow teeth. The first instruction asked by plaintiff and given by the court made specific reference to the alleged defamatory words spoken in the presence of the witness Albert Manes.

The answer of defendant was, among other things not pertinent, a specific denial of the fact that he spoke the words charged. The proof of defendant tended to show that he had not spoken to plaintiff in the presence of witness Albert Manes the defamatory words alleged and shown by the testimony of said Manes, or in the presence of anyone else. The defense made a

very serious attack upon the general reputation of the witness Albert Manes for truth and veracity. In addition, the defense sought to impeach Manes by showing by other witnesses (who said they were present at the railroad station in Crocker at the time defendant is said by this witness to have uttered the words charged), that no such conversation was in fact had between defendant and plaintiff.

The three instructions complained of, the giving of one of which for defendant and the refusal of two of which for plaintiff constitute the only assignments of error, will be found set out in the opinion, together with such other facts as we may find to be necessary to make clear the discussion.

I. But three points are made by appellant, each of which as stated, has to do with instructions, either given or refused. At the request of defendant the learned trial court gave this instruction, to-wit:

Confining Slander to Charge.

"No. 4. Unless you find from the evidence that the defendant spoke of and concerning plaintiff at Crocker, Missouri, on or about the 30th day of July, 1908, in the presence and hearing of witness Manes the alleged defamatory words stated in plaintiff's petition, you cannot find the issues for plaintiff, even though you may believe from the evidence that defendant spoke such words to other parties at different times and places."

Appellant contends that in this the learned judge nisi erred. We disallow this point and hold the instruction correct in principle. If it was adventitiously wrong, the fact was due to another error, which we hereafter discuss. It was the duty of plaintiff to confine himself to one publication as a basis of recovery; or else to have charged each separate and distinct publication upon which he sought recovery in a separate count. [Christal v. Craig, 80 Mo. 367.]

II.  Appellant contends that the court erred in refusing to give at his request instructions numbered eight and nine, which are as follows:

Slander Spoken
to Persons Not
Pleaded.

"No. 8.  The court instructs the jury that if you believe and find from the evidence that the defendant in the presence and hearing of J. M. Carmack, or others, spoke of and concerning plaintiff slanderous and defamatory words similar and of like import to those charged in the petition, they may consider such evidence as tending to prove express malice on the part of the defendant.

"No. 9.  The court instructs the jury that if you believe and find from the evidence that at any time within two years of the time of filing this suit, to-wit, the 19th day of August, 1908, the defendant maliciously spoke of and concerning the plaintiff, R. S. Anderson, in the presence and hearing of James F. Vaughan the words alleged in the petition, to-wit: 'R. S. Anderson (meaning the plaintiff) is a thief.  That he (meaning plaintiff) stole a set of harrow teeth from me and I can prove it by John Ormsby,' you will find the issues for the plaintiff and assess his damages at such sum as you may believe and find he is entitled to recover, not to exceed the sum of ten thousand dollars."

We are of the opinion that instruction eight should have been given and that the refusal of the court to give it constituted error for which this case must be reversed and remanded.  We are, however, of the opinion that the court did not err in refusing to give instruction nine.  The reasons for all three of these rulings are germane to each other and are such that all points raised can for brevity and clarity well be considered together.  This is so, for the reason that if appellant's contentions are each the law, divers publications to divers persons at different times and

places could be pleaded in one count, proved upon trial, and plaintiff could pick and choose the one on which he would stand; or even, stand upon all and failing and refusing to elect, leave the jury to pick from among them some one or more publications on which to bottom a verdict. We have said that this is not the law; the contrary is well settled. On the other hand if it is the law as respondent contends that said instruction four was properly given and instruction eight properly refused, then a plaintiff in a slander suit is bound to the one publication specifically counted on and may not prove *for any purpose whatever* the fact of the publication, to others than those (if any) set out in his petition, of slanderous words of like or similar import to those charged in the petition. We think neither position is throughout correct; but since the rules of pleading and practice upon which a solution of these contentions turns, seem to have drifted away somewhat from both common law and the statute, we will examine them again briefly.

At common law it seems the pleader in a slander suit was required to allege when and where, and might if necessary to the defense be required to aver to whom, the publication was made. This is yet the law in England. [Odgers on Libel & Slander, 625.] Touching this rule the above learned writer says: "In cases of slander he [the plaintiff] must give the date of each slander, the names of the persons to whom, and the places where, each slander was uttered."

If such a bill of particulars could be required at common law in slander suits, or whatever the rule as regards definiteness and certainty in these behalves was at common law, it is the law yet in this State unless we have changed it by statute. But it is said that our statute (Sec. 1837, R. S. 1909) has changed the rule at common law requiring certainty of alle-

gation as to time and place of publication. [Atwinger
v. Fellner, 46 Mo. 276; Johnson v. Bush, 186 Mo. App.
107.] Let us see if this is correct. The applicable
part of our statute reads thus: "In an action for libel
or slander, it shall not be necessary to state in the
petition any extrinsic facts *for the purpose of show-
ing the application to the plaintiff of the defamatory
matter* . . . but it shall be sufficient to state gen-
erally *that the same was published or spoken concern-
ing the plaintiff*," etc. (Italics ours.) [Sec. 1837, su-
pra.] The query which arises in construing this stat-
ute is: Wherein and to what extrinsic facts does it
apply and what facts does it obviate the necessity
of alleging? Manifestly, to such extrinsic facts as this
term was technically used in a common-law declara-
tion for slander, to designate, viz.: Such extrinsic
facts as serve to show the "application to plaintiff of
the defamatory matter," and touching this *purpose*
and this only, "it shall be sufficient (i. e., to show the
application of the defamatory matter to plaintiff) to
state generally that the same was published or spoken
concerning the plaintiff." [Newell, Slander & Libel,
728, 838; Dias v. Short, 16 How. Pr. (N. Y.) 322; Pike
v. Van Wormer, 5 How. Pr. 171; Culver v. Van Anden,
4 Abb. Pr. 375.] In the case of Pike v. Van Wormer,
supra, discussing the effect of the New York statute on
pleading in actions for slander and libel, which stat-
ute we have carried bodily into our Code as section
1837, supra, WILLARD, J., said:

"The Code merely dispensed with the allegation
of extrinsic facts, showing the application of the words
to the plaintiff, in order to obviate the difficulty which
was supposed to have been occasioned by the decision
of the Supreme Court in Miller v. Maxwell, 16 Wend.
(N. Y.) 9. It does not dispense with the necessity of
an averment or innuendo when they become essential
to show the meaning of the words themselves. In

these respects the rules of pleading remain unaltered.''

Persuasive toward the correctness of this view is the fact that at common law a declaration for slander ordinarily contained, what was designated in the books on pleading as, an ''averment of extrinsic matters,'' wherein it was set forth with much of sonorous phrase pending, or lately pending, matters in which plaintiff took part and likewise the part he took, which matters and acts were deemed to make clear wherein and why the slanderous words applied to him. [Newell on Slander & Libel, 838; Yates, Pleadings, 388.]

We think it is obviously a strained construction to interpret this statute as so far changing the common-law rule as to relieve plaintiff from the necessity of averring when publication was made, or from stating definitely where it was made. It is easy to see the non-necessity of the rule of definiteness and certainty as regards libel. Because it is difficult to imagine a case wherein the defense to a libel suit would be that no such writing existed, and cases are reasonably rare wherein the question of publication *vel non*, would become an issue. There might be questions mooted in defense as to whether the matter was libelous, or, as to whether defendant had part in the publication, and rarely, but not ordinarily, as to the fact of publication. But touching defamatory words spoken, or alleged so to be, so crying a necessity to hold to the common law exists that it ought not to be lightly cast aside at the behest of a statute which, if it means what it has been said to mean, is so glaringly ambiguous. If the defense be that the words spoken were true, in short, justification, then obviously it makes no difference when, where or to whom these words were spoken, barring such objection as might arise from the Statute of Limitations. But if the defense be as here that defendant did not speak the words charged, it is ap-

parent that every rule of fairness demands that defendant be informed specifically if he desires the information for his defense, as to the time and place, at least, where the alleged defamatory words were spoken. Otherwise it is difficult to see how a defendant, being innocent of the publication, could defend himself adequately in the action, or protect himself against conspiracy and perjury. Any other view smacks of the ambuscade and of lying in wait, privileges which we have long prided ourselves upon having abdicated when we abandoned common-law pleading.

It is obviously unthinkable that plaintiff under all circumstances may merely aver "that to-wit: On or about one year from the date hereof, defendant at the city of St. Louis, wilfully, wantonly and maliciously spoke and published of and concerning the plaintiff," etc., without averring definitely when or where, or to whom of the six hundred and eighty-seven thousand inhabitants of that city the alleged defamatory words were spoken, and that he may, whatever the defense is, refuse on motion to that end, to make his petition more definite and certain. It is to be conceded of course that in practically every case of libel, from the very nature of the case, no necessity would exist for a so-called bill of particulars, and that in many actions for slander it would suffice to aver publication generally, as to persons and to aver time and place under a *videlicet,* but for the reasons stated it would not fairly or reasonably suffice, at least as against a motion to make more definite and certain, in a case of alleged slander wherein the defense is not guilty.

The case of Atwinger v. Fellner, supra, was correctly ruled upon the concrete facts up for judgment. While the petition under discussion in that case contained "no allegation that the words were uttered in

the presence of any one," yet no attack was made upon that petition *till after verdict*. Clearly, a petition which merely averred the fact of publication generally, without descending into a bill of particulars, would not be fatally defective, or liable to successful assault after verdict, but would be cured by the Statute of Jeofails. [State ex inf. v. Arkansas Lumber Co., 260 Mo. l. c. 283; 31 Cyc. 761, and cases cited; Sec. 19, p. 671, G. S. 1865.] No other cases have been found in this State which deal with this matter of sufficiency of pleading, except the Atwinger and Johnson cases, supra. In other American jurisdictions the rule as to definiteness of allegation as to the time and place at which, and the person or persons to whom, the slander was published, is thus stated by Cyc.:

"It is generally held sufficient in an action for slander to allege that the words were spoken or uttered by defendant in the presence of some third person or persons and the names of such person or persons need not be given. So it has been held that an averment that defendant 'published' the defamatory matter is good, as the word 'published' imports that the words were spoken in the presence of some third person. The petition should allege with exactness the time when and the place where the publication was made, and it has been held that any indefiniteness in these respects will render the petition insufficient as against a demurrer." [25 Cyc. 446.]

Touching the right of defendant, who may be otherwise wholly unable to prepare his adequate defense, to have the petition made more definite and certain, the rule in other jurisdictions is thus stated by Cyc.: "It it generally held that defendant is entitled to know definitely the time and place of the publication of the alleged slander or libel and the name of a party to whom publication was made, and if com-

plaint fails to shows these particulars, a bill [of particulars] will be ordered.''   [25 Cyc. 467.]

From these authorities and reasons we think it should be ruled (a) that the plaintiff in an action for slander (and in libel as well where need arise) on motion to make more definite and certain, may be required to set forth when and where and to whom the alleged defamatory words were published; (b) that since each publication of defamatory words constitutes a separate cause of action, every such publication must be separately pleaded in separate counts of the petition, and (c) that no recovery can be had for the publication of a slander which is not pleaded, but (d) other publications of defamatory words of similar import to those pleaded may be shown by the evidence for the purpose of showing express malice in augmentation of damages, either actual or punitive. Of course, plaintiff ought not in his proof to be held always to strict accuracy as to time, so long as the variance may not bring him foul of the Statute of Limitations, or mislead defendant to his hurt, or amount to a palpable fraud upon the court.

From these conclusions it results that instruction four given for defendant, while stating correct principles of law, did not go far enough when standing alone and without the aid of instruction eight, offered by plaintiff and erroneously refused by the court. Both of these instructions were proper if given together, but the learned trial court having refused the instruction requested by plaintiff which correctly set out the office and effect of evidence of other publications, should then have modified instructions four by an apt statement of the purpose for which the jury could consider other publications of defamatory statements of like or similar import, or else refused it. For in the last analysis the concrete result of giving this instruction under the circumstances and in the

form as given was to let this testimony of other publications into the case and then at the end to remove it wholly from the jury's consideration; to tell them in effect, that they need not consider it for any purpose. *Arguendo* we may say (though *we would not and do not now write* such a reason into the law) that the jury being more or less subject to the suspicions and frailties of other humans, might, but for this instruction, have argued the probability of defendant's having spoken the words complained of to the witness Manes from the fact that he had spoken them to so many other persons.

It follows that for the failure of the trial court to give instruction eight, supra, this case must be reversed and remanded for a new trial in a manner not inconsistent with the views herein set down. Let this be done. All concur.