JAMES A. MACDONOUGH *v.* THE A. S. BECK SHOE CORPORATION, a Delaware corporation.

(*November* 22, 1939.)

LAYTON, C. J., RODNEY and TERRY, J. J., sitting.

*Joseph Handler* and *William Prickett* for plaintiff.

*Stewart Lynch* for defendant.

Superior Court for New Castle County, No. 19, November Term, 1938.

LAYTON, C. J., delivering the opinion of the Court:

The defendant moves to have stricken from the declaration the allegation descriptive of the plaintiff, "and head of a family consisting of himself, his wife and four children". As will appear the defamation alleged is that the plaintiff had committed adultery, a statutory offense. The offense is accomplished by the sexual intercourse of two persons either of whom is married to a third person. *Rev. Code* 1935, § 5258. The words, "his wife", serve as a sufficient statement that the plaintiff is a married man, although, of course, the fact could have been stated directly. It is clear that so much of the allegation complained of should not be stricken. Furthermore, in an action for defamation, the plaintiff may, as bearing on the question of damages, introduce evidence as to his family. 37 *C. J.* 94; *Enquirer Co. v. Johnston,* (7 *Cir.*) 72 *F.* 443; *Enos v. Enos,* 135 *N. Y.* 609, 32 *N. E.* 123; *Klumph v. Dunn,* 66 *Pa.* 141, 5 *Am. Rep.* 355. The motion to strike the allegations is denied.

Other allegations asked to be stricken are those averring the discharge by the defendant of the plaintiff from his employment. It is contended that the allegations are material only in a suit for breach of contract, and are

not only superfluous but improper in a *tort* action for slander. *Southwestern T. & T. Co. v. Long,* (*Tex. Civ. App.*) 183 *S. W.* 421, is cited; but there the allegation especially excepted to was that the plaintiff had satisfactorily performed all of the duties required of her, an allegation both necessary and proper in an action for damages for wrongful discharge from employment. Here the allegations sought to be stricken have to do only with the plaintiff's loss of employment as a result of the slander. Loss of a situation as a consequence of slander is a special damage, which, if relied upon as such, must be alleged. See *Newell* on *Libel & Slander,* 1030, 1040, 1041. The motion to strike these allegations is also denied.

The first ground for demurrer is that the declaration is vague, indefinite and uncertain in that the particular defamatory words are not set out. The allegation is "that the said Kahn said that the plaintiff was too intimate with the girls and with the cashier in particular". If the language of the declaration had been that Kahn said "you", or "he" (meaning the plaintiff) "are", or "is", "too intimate with the girls", etc., no objection could be taken. The material part of the allegation is the charge of intimacy with the girls and with the cashier in particular. At the trial the plaintiff will be required to prove the words as alleged with substantial precision. See *Nailor v. Ponder,* 1 *Marv.* 408, 41 *A.* 88. The slanderous words are sufficiently stated.

The second ground for demurrer is that the words are not slanderous. Apparently the theory is that the words are not slanderous in any sense and cannot be made so by innuendo. An innuendo is a statement by the plaintiff of the construction which he puts upon the words himself, and which he will endeavor to induce the jury to adopt at the trial. *Newell, Libel* and *Slander,* § 751; 37 *C. J.* 25. Words are to be given their plain and natural meaning, and are to be understood as a person of average intelligence

and perception would understand them. It follows that the fair and reasonable meaning of words cannot be enlarged or restricted by the innuendo. But if the words are capable of the meaning ascribed to them by the innuendo, however improbable it may appear that such was the meaning conveyed, it is the province of the jury to say whether they were in fact so understood. *Newell, Libel* and *Slander,* § 752.

■ The word, "intimate," has a primary meaning, signifying a close personal relationship. It has also a well understood secondary meaning, imputing an illicit sexual relationship. By some of the lexicographers this is termed a euphemism. *Adams v. Stone,* 131 *Mass.* 433, cited by the defendant, does not hold that the word "intimate" is incapable of adulterous significance. On the contrary, it is recognized distinctly that, by proper allegation of facts and circumstances surrounding the use of the word, it may be given the "special and peculiar" meaning. *McCarty v. Coffin,* 157 *Mass.* 478, 32 *N. E.* 649, is without value. The suit was one for breach of promise of marriage. The offer of proof distinctly was not an offer to prove criminality.

On the other hand, the cases cited by the plaintiff, *Collins v. Dispatch Pub. Co.,* 152 *Pa.* 187, 25 *A.* 546, 34 *Am. St. Rep.* 636, *Arnold v. Lutz,* 141 *Iowa* 596, 120 *N. W.* 121, and *Wilcox v. Moon,* 63 *Vt.* 481, 22 *A.* 80, hold directly that the word "intimate" may have the meritricious meaning ascribed to it by the innuendo; and the first two of the cases apparently hold that the word may be defamatory even without the aid of an innuendo.

It is not precisely clear why *Pleasanton v. Kronemeier,* 6 *Boyce* (29 *Del.*) 81, 97 *A.* 11, is cited by the defendant. The defendant was charged with calling the plaintiff, a married woman, a whore. The case was decided before the passage of *Section* 5258 of the present code by which adul-

tery is made a misdemeanor, punishable by fine, imprisonment or both. The case appears to have been correctly decided on the common law.

Defamatory words, actionable *per se,* are properly charged in the declaration and this ground for demurrer must fail. ,

■ It is next contended that the declaration is vague and indefinite in that it does not set forth the place where the alleged slanderous words were uttered, nor the names of the persons in whose presence they were spoken. It is alleged that the words were spoken in the City of Wilmington, but it is said that this is not sufficiently precise. In 13 *Ency. Pl. & Pr.* 60, it is stated that the place where the words are alleged to have been spoken is immaterial; and that the words may be alleged to have been spoken in one place and proved to have been spoken in another, though laid without a *videlicet.* In 37 *C. J.* 35, it is said that the place of publication should be alleged. In *Haag v. Cooley,* 33 *Kan.* 387, 6 *P.* 585, it was distinctly recognized that a petition may state a good cause of action for slander without stating when or where or to whom the alleged slanderous words were spoken. In *Penry v. Dozier,* 161 *Ala.* 292, 49 *So.* 909, in a general discussion of pleading in actions for defamation it was said that the declaration should allege where the words were spoken. It is unnecessary to probe the correctness of these apparently discordant statements. An examination of many approved forms given in the books shows very clearly that such definiteness as to the place of utterance as is contended for by the defendant was never the rule of the common law, whatever particular rulings may have been made upon demands for bills of particulars; and, we think perhaps, that the defendant has confused the requirements of a sufficient declaration in slander with the right of a defendant in a proper case to demand a bill of particulars. *Anderson v. Shockley,* 266 *Mo.* 543, 181 *S. W.*

1151, 1154, *Ann. Cas.* 1918*B*, 500, strongly relied on by the defendant was not dealing with a question of initial pleading at all. The declaration alleged the place of utterance as a certain county. The defendant's defense was that he did not speak the words charged. Error in the charge was alleged, and it was in connection with the alleged error and the particular defense set up that the court used the language which is the basis for the contention that the precise place in the City of Wilmington where the slanderous words are alleged to have been spoken must be set forth. That the Court, in the cited case, did not intend to lay down a general rule is clear. The Court was speaking of a bill of particulars. It concedes that in many actions for slander it would suffice to aver publication generally as to persons and to aver time and place under a *videlicet;* and points out that if the defense be that the words spoken were true, it would make no difference when, where or to whom the words were spoken, barring such objection as might arise from the statute of limitations; and precisely the court said that "it should be ruled: (a) That the plaintiff, in an action for slander * * * on motion to make more definite and certain, may be required to set forth when and where and to whom the alleged defamatory words were published".

There is even less force in the contention that the names of the persons in whose presence or to whom the words were spoken must be set out. See note to *Anderson v. Shockley, supra, Ann. Cas.* 1918*B*, 505.

It is contended that the declaration is duplicitous in that it is alleged that the words were spoken in a certain discourse or in certain discourses. There is nothing in the language of the declaration that fairly suggests that the plaintiff is charging and is relying on words spoken at more than one time and place. The words, discourse or discourses, very reasonably refer to a general conversation at

a given time. The case is not like *Swinney v. Nave*, 22 *Ind.* 178, where publication was charged at a given time "and at divers other times".

It is contended that the declaration does not sufficiently plead facts showing special damages. In the first place it may be said that the words alleged to have been spoken are actionable in themselves. There need have been no allegation of special damages at all to permit a substantial recovery. General damages are presumed. *Newell, Libel* and *Slander*, § 999. As has already been said, loss of employment resulting directly from the defamation is a special damage, and this damage has been sufficiently pleaded. But as a further special damage it is alleged that the plaintiff has not been able to procure any employment similar to that which he held in the employ of the defendant and to which, by long familiarity, he was particularly fitted, or any other employment. This allegation of special damage is not sufficiently specific under the rule laid down by this court in *Snavely v. Booth et al.*, 6 *W. W. Harr.* (36 *Del.*) 378, 176 *A.* 649. The defendant is not adequately informed of what it will be required to meet in this respect at the trial, and evidence of this damage would not, on objection, be received.

One of the grounds for demurrer is that the alleged slanderous words may be privileged. This is not understandable, and the defendant admits that this ground is not well taken as the declaration now stands; but it contends, however, that sufficient facts should appear in the declaration so that the defense of privilege may be raised by demurrer. In general the defense of privilege cannot be raised on demurrer. 37 *C. J.* 50. What the defendant seems to urge is that if a defendant in an action for defamation conceives his defense to be privilege, the plaintiff can be compelled to set forth all of the facts and circumstances surrounding the publication so that the ques-

tion, possibly, can be decided on demurrer. This, we think, is not the law.

The plaintiff admits that the declaration is insufficient in that it does not set forth facts showing that the defendant "approved the act of said Kahn in uttering said slander". This allegation is patently a conclusion. The facts constituting ratification by the defendant of the act of its agent should be specifically alleged; and for this reason the demurrer must be sustained. An order sustaining the demurrer will be entered.